DOUGLAS O. CRADDICK, Plaintiff/counterdefendant,
v.
OVERLAND OLOTOA MANUMA & LEAO'A V. MANUMA, Defendants/counterclaimants,
v.
MARTIN ANDERSON, Intervenor.

High Court of American Samoa
Land and Title Division

LT 4-84 and 30-84

October 10, 1984

Counsel: Douglas Craddick, pro se
For the defendant, Mulitauaopele Ivi
For the intervenor, Leulumoega S. Lutu

Before MURPHY, Associate Justice, Presiding, OLO and TAIMANU, Associate Judges.

The above-entitled matter came on for trial before the undersigned court beginning Monday, October 1, 1984. Testimony and evidence was presented; all parties rested on Tuesday, October 2, 1984. Having carefully considered the evidence and law, the court enters the following findings and conclusions.

## BACKGROUND

This is a dispute over land, located in the village of Pago Pago, which all parties agree is freehold.* Anderson has purchased a part of Craddick's interest so their positions are identical. References in this opinion to Craddick will include the claim of Anderson. Overland Olotoa Manuma is the head of the Olotoa family. She is married to Leao'a Manuma. They will be referred to in this opinion as "Olotoa."

The seeds of this interesting litigation were planted in 1876. In October of that year a woman named Jane Sophia Foster acquired a tract of land called "Logopesega" from a Samoan named Tuuai. She confirmed her ownership in the Western Samoa Land Commission as claim number 3400. On March 31, 1897, the Supreme Court of Samoa vested title to "Lotosega" to her in court grant number 852. (The spelling varies but "Logopesega" will be used throughout this opinion.) The court grant was recorded in volume I, Court Grants, pages 169-70.

Jane Foster died in 1910, leaving a will that divided the property into three parcels. The will was recorded in 1912 in volume I, Miscellaneous Register at pages 271-72. (Most of the above is gleaned from _Foster v._ _Olotoa_ (1953) 3 A.S.R. 76, of which we take judicial notice at the request of all parties.) Jane divided the land among two sons, Wesley and Emil, and a grandson, Heman. Emil later conveyed his parcel to Wesley (actually, Wesley's children); thus Wesley and Emil's shares merged. Craddick claims and Olotoa does not dispute, that he has acquired Wesley's land. It is Heman's land and its boundaries that are in dispute.

The will defined Heman's portion as follows: "I give, devise and bequeath to my grandson Heman that piece of my land on the inland side of the main road in Pago Pago extending from Wolbert's leasehold to the little creek." Wesley's portion was delineated as follows: "I give, devise and bequeath to my son Wesley Foster all that piece of my land in the village of Pago Pago on the seaward side of the road . . . ." In 1920 Heman left the territory and has not been heard from since.

Adjoining this land, on the landward side of the road is the land Tepatase, which belongs to Olotoa. A night club called Tepatasi is located on it. In 1926 Olotoa's father built a three-story building on the land. It burned down a few years ago.

In 1981 Craddick purchased, from Sally Foster and other Foster heirs, all claim to the land Logopesega. Thereafter, Olotoa attempted to register land Logopesega as individually-owned land of Olotoa Overland. That attempted registration was objected to and became LT 30-84 in the high court. In the meantime Craddick filed LT 4-84 claiming that Olotoa's husband Leao'a was threatening Craddick and his employees and attempting to interfere with his use of the land. Craddick has constructed a temporary office on the

---

*A.S.C.A. sec. 37.0201(b): "Freehold lands" means all those lands included in court grants prior to 1900 . . . .

seaward side of the road and Olotoa contends part of it encroaches on the Heman property which is now owned by her.

The foregoing is pretty much undisputed. We shall now examine the respective contentions of the parties.

## POSITION OF THE PARTIES

As previously noted, both parties claim ownership of Heman's land. Nor do they agree upon the boundaries of the land, Craddick claiming that Heman's land was to the inland side of the road in accordance with the 1910 will, Olotoa claming a small portion of it lies to the seaward side of the road.

Craddick's claim is pretty straightforward. He has purchased quitclaim deeds from Heman's sisters. Their uncontroverted affidavits allege that Heman died unmarried, without children and left no will.

On the other hand Olotoa's claim is more convoluted and contemplates various alternatives. She contends first, that Fanene Foster was Heman's father. That somehow, Fanene conveyed the land to one Teutusi; that among Teutusi's heirs was William (Viliamu) Satele. Sometime in 1947 William came to Olotoa's father and borrowed $350. He promised that if the debt was not repaid (which apparently it wasn't) he would execute a deed to Logopesega in favor of Olotoa. She admits however, that the deed was drafted but was never executed by Satele. In June of 1984 Satele did execute a quit claim deed—in favor of Craddick!

Olotoa asserts an additional claim to the land based upon adverse possession. She testified that in 1926 her father began construction of a three-story building, completed in 1927. In 1927 he registered land Tepatasi which, as has been noted, is adjacent to Logopesega and also bounds on Wolbert's leasehold. It is undisputed that Tepatasi is Olotoa's land. However, Olotoa now claims that a part of the three-story building was actually on Heman's land. She also claims that over the years Olotoa people have used portions of Logopesega and their children have played on the property. It is admitted that in all legal documents referring to the three-story building (such as building permits, etc.) it was described as being on Tepatasi, not Logopesega.

## FINDINGS AND CONCLUSIONS

Although nine or ten witnesses testified and twenty or so exhibits were offered and admitted there was not all that much conflict as to the facts. The maps introduced are substantially the same. The issue is which party has the best claim to Heman's land.

Olotoa's claim to the land, based upon a deed from William Satele that was never executed falls flat. In the first place, there is no competent evidence to demonstrate how Heman's land could have been conveyed to Teutusi. In the second place, there is no competent evidence to demonstrate that his son William Satele ever had the authority to convey the land. His sister, Salamasina Satele, a daughter of Teutusi testified at trial. She claims that the Satele family indeed owns land in Pago Pago, near to both Tepatasi and Logopesega but not a part of either. In the third place, the proposed conveyance never took place. Satele never executed a deed to Olotoa and in fact has recently executed a quitclaim to Craddick. We conclude that any claim to Logopesega by Olotoa based upon title received from Teutuse/Satele is without merit.

What about her claim based upon adverse possession. Both the court and

the territorial legislature (Fono) have recognized the principle of adverse possession. A.S.C.A. sec. 37.0120; Fau v. Wilson (1964) 4 A.S.R. 443. The cases and the statute (amended in 1982 to increase the occupancy period from twenty to thirty years) embrace English common law principles. The occupation must be actual, open, notorious, hostile, exclusive and continuous. Lolo v. Heirs of Sekio (1964) 4 A.S.R. 477. As to the 1926 construction there is no competent evidence to show which portion of the building, if any, occupied what portion, if any, of Heman's land. Futhermore, it is inconceivable that Olotoa would have intentionally built a part of the structure on the wrong parcel. If indeed it was so placed it must have been done by mistake. Olotoa's family has always referred to the building as being upon Tepatasi. A portion of a structure encroaching by mistake, does not constitute open or hostile occupation. That portion of the Olotoa claim is without merit.

Without doubt members of the Olotoa family have from time to time passed over and used portions of Heman's land. According to witnesses at trial so have other Pago Pago families over the years. In fact, in the 1953 case referred to above, Foster took Olotoa to court to compel him to remove a boat house he had built on Logopesega. This action, as well as other conduct by the Foster family over the years, negates a claim of continuous or exclusive possession by the Olotoas.

We find it significant that it was not until 1982 when Craddick's purchases were made that Olotoa tried to register the land. If she had occupied it openly and notoriously since 1927 why wait until 1982 to advance a claim? And why as her individually-owned land?

Without defining what it is, the court in Fanene v. Talio (1977) LT 64-77 described how the courts have held individually-owned land to be created. It must be (1) cleared in its entirety or substantially by an individual from virgin bush; (2) cultivated entirely or substantially by him; and (3) occupied by him or his family continuously from the time of clearing. This land was occupied before the turn of the century. There is no way it could be Overland Olotoa's individually-owned land.

The conclusion is inescapable that Olotoa's claim to land Logopesega is without merit and inferior to that of Craddick. It is therefore unnecessary to decide whether Heman's land extends across the road to the seaward side or not, since Craddick owns all of court grant 852 yclept Logopesega.

Having so concluded we must also conclude that Craddick is entitled to sole and exclusive possession of the land without interference by Olotoa or her relatives or agents.

ORDER

It is ordered, adjudged and decreed:

1. That court grant 852, the land known as Logopesega, is the freehold land of Douglas O. Craddick.
2. Overland Olotoa Manuma and Leao'a V. Manuma, their family and agents are hereby permanently enjoined from interfering with the possession and use of the subject property by Douglas O. Craddick, his employees, agents or assigns.
3. The application for the registration of individually-owned land in LT No. 30-84 is denied.
4. A copy of this judgment, accompanied by a survey is to be registered by the territorial registrar in accordance with A.S.C.A. section 37.0104.